IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1887.

---

EDMUND S. HANN v. MILLIARD F. LLOYD, DANIEL J. PACKER AND BELMONT PERRY.

1. The sheriff and constables, in executing the writ of a court of general jurisdiction, having cognizance over the class of cases to which it appertains, are entitled to immunity for every act done necessarily in putting it into effect.
2. A like immunity is possessed by a prosecutor of the pleas who directs such officers to execute such a writ calling for the arrest of a person.

---

Trespass for assault, battery and false imprisonment. On motion for new trial.

The three defendants plead the general issue, with notice appended, that they will prove that they arrested the plaintiff by force of the writ described below.

At the trial it was shown that a subpœna *ad testificandum*, tested the 10th of September, 1885, directed to plaintiff, was issued out of the Court of General Quarter Sessions of the county of Gloucester, and that on the following day a warrant

was issued out of the Court of Oyer and Terminer commanding the sheriff, &c., to take the body of plaintiff, and to have him before "the Court of Oyer and Terminer and General Jail Delivery, to answer any questions that may be propounded to him in the trial of a certain indictment therein pending against," &c.

This latter writ was given to a constable, who arrested the plaintiff under it, and he and the sheriff detained him until he was discharged by *habeas corpus*.

An hour or two after this arrest, another writ was placed in the hands of the sheriff, issued out of the Sessions, commanding the officer to bring in the plaintiff to answer for certain alleged contempts of court, &c.

The jury was instructed to find for the defendants.

Argued at June Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *J. J. Crandall.*

For the defendants, *D. J. Pancoast.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The plaintiff was arrested on a writ, which at the argument was styled "compulsory process," issued out of the Court of Oyer and Terminer of the county of Gloucester, commanding the sheriff or constables of the county to bring him before the court to testify as a witness on behalf of the state in the trial of a certain indictment.   By force of this process the plaintiff was kept in custody by the constable and sheriff, two of the defendants, until discharged by *habeas corpus*.

In looking through the case it is obvious that the validity and legal effect of this writ are the only questions to be adjudged, because, as the plaintiff was first arrested and detained under it, the existence of the subsequent precept, founded on the contempt, could not validate the original im-

prisonment of the plaintiff. Granting that the process from the Oyer and Terminer, on which the plaintiff was taken, was illegal, the plaintiff was entitled to some damages, even though the subsequent writ justified his detention from the time it reached the hands of the officer. The jury at the trial was instructed to find in favor of the defence, and such instruction is justifiable only on the theory that this writ proceeding from the Oyer was, so far forth as these defendants are concerned, valid process.

The purpose of this precept was to bring into the court a recusant witness, so that he might be compelled to testify in a criminal trial then pending. Under the laws of this state the mode of constraining a witness to appear in such case is by an attachment for his disobedience of the mandate of the court whose subpœna he has contemned, or by an indictment for such misconduct. The former of these proceedings must be founded on sworn proof that a subpœna has been issued and properly served, and that it has not been obeyed, and upon that basis, and upon that basis only, should compulsory process be resorted to. This is the method to be pursued as well in criminal as in civil proceedings. With respect to civil cases there are several decisions in this court to that effect, the leading case being that of the *State* v. *Trumbull*, 1 *South*. 140. The usual course of practice in this respect in the English courts is marked out by Chitty in his book on Criminal Law, page 14.

As there was no testimony at the trial upon this subject, the legal presumption is that the writ in question was founded on the proofs thus shown to be requisite. The Oyer and Terminer is a court of general jurisdiction, and therefore, in view of the state of affairs as evidenced at the trial, the apposite maxim was, " *Omnia præsumuntur rite esse acta.*"

It is true that on the part of the plaintiff an attempt was made to show that this writ was not, in point of fact, issued by the court out of which it purported to proceed, by proving that such court was not in session on the day the writ was tested. But this endeavor was founded on the fallacy of sup-

posing that if the court was not in session on the date of the issuing of the writ, that the inference was admissible that the process was not judicially authorized. But the only deduction that could be legally made from such a premise was that the *teste* was erroneous. The want of consistency between the date of the writ and the sitting of the court could not countervail the testimony to the authenticity of the process inherent in the seal of the court and the attestation of its clerk. At all events, it was not incumbent on the ministerial officers of the court, before they executed such a writ, to ascertain that the court was actually sitting and ordered the process to be issued. Such officers are justified in acting in accordance with the face of the precept.

The result, therefore, is that we have a writ, duly authenticated, coming from a court of general jurisdiction, that was vested with cognizance over the class of cases to which it appertained, placed in the hands of the proper officials for execution. It is the legal rule that under such conditions the judicial precept must be implicitly obeyed by those to whom it is thus directed. This is a principle essential to the orderly administration of the law. And the consequence is that the officers to whom the writ is addressed will not be responsible for anything necessarily or properly done in its execution. Such ministers of the law need not show the grounds on which the tribunal in issuing the process proceeded, for they can rely on the writ alone without the production of the judgment record on which it is presumed to rest. It is not necessary to refer to books in support of a doctrine that no one will controvert. Plainly, the judge was right in holding that the writ was a complete vindication of the conduct of these ministerial officers for their arrest and detention of the plaintiff.

With respect to its effect on the rights of the other defendant, Mr. Perry, the legal situation is not so plain. He handed the writ to the constable and directed him to arrest the plaintiff under it. But in so doing he was acting, not in a private, but in a public capacity. He had the writ in his possession

as prosecutor of the pleas of the county, and when he transferred it to the constable he acted within his official province in instructing the officer as to his official duty with respect to it. The fact that the plaintiff was present when such instruction was given cannot alter the legal posture of affairs, for if he had the right to instruct the constable at all, he did not forfeit his immunity by force of such instruction being in the presence of the person to be arrested. Besides this, it did not appear that at the time in question the process had been judicially quashed or vacated, and until such event, it is a protection to every person who assists in its execution. Mr. Addison in his work on Torts, section 922, thus states the doctrine of the law on this head : "Generally speaking, however, so long as the process has not been set aside it is a protection to the attorney who has issued it, and to the client by whose commands it has issued. And though when it has been set aside it is no longer a justification to them, yet it always remains a justification to the sheriff and his officers, who had no option but to obey it." Under the circumstances stated, the prosecutor of the pleas, with respect to what he did, was invested with an immunity similar to that which was possessed by the constable and the sheriff.

With respect to the position that it appeared that the plaintiff was not only arrested and detained, but was harshly treated and unduly imprisoned, it is sufficient to say that such matters were not within the issue that was tried or that was triable. The notice affixed to the plea set up the writ as a defence; if the plaintiff intended to avoid that defence by showing an abuse of the process, it was necessary for him, by force of the Practice act, to give notice of such intention to the defendant. *Rev., p.* 867, § 119.

The result, therefore, is that this court is of opinion that the judicial instruction at the trial was in all respects proper, and the rule must be discharged.