291 N.J. Super. 58 (1996)
676 A.2d 1123
THE GRAND COVE II CONDOMINIUM ASSOCIATION, INC., GRAND COVE I APARTMENT CORPORATION, AND GRAND COVE MASTER ASSOCIATION, INC., PLAINTIFFS-RESPONDENTS
v.
BARRETT ALLEN GINSBERG, WILLIAM ATLAS ASSOCIATES, WILLIAM ATLAS, VIRGONA & VIRGONA, RAY VIRGONA, ALPINE WOODS CONSTRUCTION CORP. OF NEW JERSEY, ALPINE WOODS CONSTRUCTION CORP., LAWRENCE WECKER, BRUCE MCPHEE, QUICK MASONRY, INC., J.P. PATTI COMPANY, INC., GRANDVIEW ASSOCIATES WATERPROOFING, K.M. GABEL COMPANY INC., VERMAAS COMPANY, INC., PHILIP FRITZE & SONS, INC., CAMBRIDGE DRY WALL & CARPENTRY, CORP., F & G MECHANICAL CORP., TILCON NEW JERSEY, INC., V.A.L. FLOORS, INC., CUTRUPI & CO., INC., DEFENDANTS. WINDSOR COVE ASSOCIATES, LIMITED PARTNERSHIP, S/A ASSOCIATES, WINDJAMMER CONSTRUCTION CORP., WINDJAMMER CONSTRUCTION CORP. OF NEW JERSEY, ANCHORAGE WOODS CONSTRUCTION CORP., DEFENDANTS/THIRD-PARTY PLAINTIFFS-RESPONDENTS
v.
NEWARK INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, THIRD-PARTY DEFENDANTS-APPELLANTS, AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA AND NORTH RIVER INSURANCE COMPANY, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1996.
Decided June 11, 1996.
*61 Before Judges MICHELS, BAIME and VILLANUEVA.
Virginia M. Sullivan argued the cause for appellant Newark Insurance Company (Golden, Rothschild & Spagnola, attorneys; Kenneth R. Rothschild, of counsel; Ms. Sullivan, on the brief).
Marilyn S. Silvia argued the cause for appellant Federal Insurance Company (Hill Wallack, attorneys; Gerard H. Hanson, of counsel; Ms. Silvia, on the brief).
Michael S. Hanusek argued the cause for respondents Windsor Cove Associates, Limited Partnership, S/A Associates, Windjammer Construction Corp. Windjammer Construction Corp of New Jersey and Anhcorage Woods Construction Corp. (Hirsch, Newman & Simpson, attorneys; Daniel P. Simpson, of counsel; Mr. Simpson and Mr. Hanusek, on the brief).
Robert C. Epstein argued the cause for respondents The Grand Cove II Condominium Association, Inc., Grand Cove Apartment Corporation and Grand Cove Master Association, Inc. (Hannoch Weisman, attorneys; Mr. Epstein, of counsel and on the brief).
Respondents National Union Fire Insurance Company of Pittsburgh, PA and North River Insurance Company did not file briefs.
The opinion of the court was delivered by VILLANUEVA, J.A.D. (Retired and temporarily assigned on recall.)
*62 We granted leave to appeal in two separate but related appeals[1] from a Law Division order compelling Newark Insurance Company and Federal Insurance Company "at their own cost and expense [to] fully defend" the developers of a residential complex. Previously, we had denied both insurance companies' motions for leave to appeal on the coverage issue. We now reverse.
Windsor Cove Associates was the sole developer/sponsor of Grand Cove, a condominium and cooperative development located on the Hudson River in Edgewater, New Jersey. Grand Cove is now plagued with major problems that include leaking and water intrusion, settling of fill and backfill material which has resulted in the cracking of concrete structures, and potential defects in the sanitary sewer system.
This construction defect litigation was brought in 1989 by a condominium association, a cooperative corporation and a master association (collectively, the Associations) on behalf of the owners of fifty-one residential condominium and cooperative units in Grand Cove (the Project).[2] The Associations sought to recover damages for design and construction defects from parties who participated in the development, design and construction of the Project. They allege that many of these problems began to appear during construction.
*63 In a Fourth Amended Complaint, the Associations asserted that the Developers[3] were liable for damages caused by "severe design and construction deficiencies, defects, errors and omissions." In their Third Amendment to the Fourth Amended Complaint, the Associations asserted claims against the Developers for negligence, statutory violations, breach of contract and warranty, breach of fiduciary duty, and misrepresentation. The Associations claim that the damages allegedly sustained by them are "injury to the property of the Associations and the loss of the use and/or beneficial use thereof." The Associations' expert Carl F. Walter, III certified that this property damage existed in 1987 and "occurred in part in 1987"; the Associations make similar allegations.
The Developers filed a third-party complaint against four insurers, including the two primary carriers Federal Insurance Company (Federal) and Newark Insurance Company (Newark) (both collectively, the insurers or carriers), seeking a declaration of the insurers' obligation to defend and indemnify and alleging breach of contract. The third-party complaint relies solely on the underlying negligence claim. The issues involving Federal and Newark arise from the Fourth Amended Complaint filed in May 1993, which named the Developers and others as direct defendants.
According to the insurance carriers, the trial court permitted the plaintiff Associations to argue damages not asserted in the complaint, i.e., "damage to work performed by others on the project." In other words, the claims for coverage are that these insured Developers allegedly caused damage to the tangible property of other contractors on the Project. The insured Developers, for example, "were performing construction management services, ... making design decisions, ... changing the quality of the work in many instances without the knowledge or without the approval of ... the design professional."
*64 The Developers filed a motion for partial summary judgment for a declaratory judgment compelling Newark and Federal to defend them and reimburse them for defense costs already incurred. Newark and Federal filed separate cross-motions for summary judgment seeking dismissal of the declaratory judgment action. After oral argument the trial court granted the Developers' motion for partial summary judgment, denied the insurers' cross-motions, and ordered Newark and Federal to defend the Developers in the underlying action by order dated April 12, 1995 (April 1995 order). The order provided, in part:
1. The third party defendants, Federal Insurance Co. and Newark Insurance Company, owe a duty to [the Developers] to defend with respect to [the Associations'] Fourth Amended Complaint;
2. Third party defendants, Federal Insurance Co. and Newark Insurance Company, shall at their own cost and expense fully defend third party plaintiffs with respect to the Fourth Amended Complaint....
Federal and Newark filed separate notices of motion for leave to appeal the April 1995 order. On June 19, 1995, we denied the motions noting:
We emphasize that we deny leave to appeal because we do not read or construe paragraph 2 of the order of the Law Division, dated April 12, 1995, to be a mandatory injunctive order. Rather, we read and construe this paragraph to be an interlocutory declaration of the coverage afforded by the third-party defendants [Federal's and Newark's] policies of insurance. Furthermore, this interlocutory declaration does not resolve all issues as to all parties in this matter and the granting of leave to appeal from this interlocutory order "runs counter to a judicial policy that favors a[n] `uninterrupted proceeding at the trial level with a single and complete review'"

State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985) (quoting In re Pennsylvania R.R., 20 N.J. 398, 404, 120 A.2d 94 (1956)), and undoubtedly will further delay this already unduly protracted six-year old complex matter.
Federal's subsequent application for review by the New Jersey Supreme Court was denied on October 2, 1995.
Thereafter, counsel for Newark advised the trial court at a status conference that since the Appellate Division found that the April 1995 order was not a mandatory injunctive order, Newark had determined that it was not under an affirmative duty to assume the defense of the named insureds until the underlying claims had been settled or tried, at which time a trial on the *65 coverage issues could be held; if the court then determined that coverage was afforded, Newark could pay or reimburse the defense costs.
The trial court advised counsel for the insurers that the intention of its April 1995 order was to direct the insurers to defend the Developers immediately, stating:
You're either going to supply the direct defense of the developers who have big exposure or you're going to pay for their counsel on an ongoing basis. You're not going to wait to the end and assess whether you're going to pay their counsel. You're going to pay them now and that would be my order.
Accordingly, on October 19, 1995, without benefit of a motion from any party, the trial court entered an order directing the insurers to assume the defense of the Developers or commence payment of their attorneys' fees immediately and to pay within thirty days all legal fees and disbursements incurred by the Developers to date. Specifically, the order provided:
1. The Third Party Defendants, [Federal and Newark], shall have until October 27, 1995 to notify Daniel P. Simpson and Gordon Litwin, Esqs. [attorneys for Developers] as to whether or not [Federal and Newark] have appointed new counsel to handle the direct defense of Plaintiffs' claims in this action subject to the right of Defendant/Third Party Plaintiffs [the Developers] to apply to the Court to designate their own counsel; in the event [Newark and Federal] do not elect to so notify Mr. Simpson and Mr. Litwin, their law firms shall remain as counsel of record in the litigation and [Federal and Newark] shall be deemed to have consented to their retention for such purpose;
2. [Federal and Newark] shall pay all defense legal fees and disbursements incurred by [the Developers] to date within thirty (30) days of receipt of invoices for services rendered by [the Developers'] attorneys in connection with this litigation; in the event [Federal and Newark] object to the applicability and/or reasonableness of any such invoices, [Federal and Newark] shall file an application with the Court within such thirty (30) day period with respect to any such invoice or invoices to which [Federal and Newark] object stating the reasons for [their] objections to same or any portion thereof;
3. Invoices rendered by counsel for [the Developers] after the date of this Order shall be paid by [Federal and Newark] within thirty (30) days of their presentation to [Federal and Newark]; and
4. In the event [the Developers] are notified of a demand for settlement by Plaintiff[] [Associations] which is deemed acceptable to [the Developers], [the Developers] shall immediately transmit notice of same to counsel for [Federal and Newark]; upon receipt of such notice, [Federal and Newark] shall have thirty (30) days in which to object to such settlement being consummated by making an application to the Court for a hearing to determine the good faith reasonableness of *66 [Federal's and Newark's] objection within such thirty (30) day period; in the event no such application is made within such thirty (30) day period, [the Developers] shall be free to enter into such settlement with Plaintiff[] [Associations] and [Federal and Newark] shall thereafter be bound by the terms and conditions contained therein....
In November 1995, Federal and Newark filed separate motions for leave to appeal. Those motions were granted, as were Federal's motions for a stay of the October 19 order pending appeal and for leave to file a Supplemental Appendix.
The trial, which had been scheduled to commence on March 11, 1996, was postponed, but is now scheduled for June 17, 1996.

The Insurance Policies
Newark and Federal issued comprehensive general liability (CGL) insurance policies in which the Developers are either the named insureds or additional insureds.
The primary Federal policies of insurance each contain the following express covenants:
We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under any contract or agreement because of: bodily injury or property damage caused by an occurrence; personal injury or advertising injury covered by this insurance.

We will defend any suit against the insured seeking such damages. We may investigate and settle at our discretion any claim or suit. We will not defend any suit or pay any claim after we have used up the applicable Limit of Insurance by payment of judgments or settlements.
[Emphasis added.]
The Federal policies define property damage as
1. physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or
2. loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
The Federal policies define occurrence as "an event, including continuous or repeated exposure to conditions which results in bodily injury or property damage."
In its primary policy, Newark expressly covenants to insure the Developers as follows:

*67 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [A.] bodily injury or [B.] property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
[Emphasis added.]
Occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The Demands to Defend and the Third-Party Complaint
In 1993 after the Associations filed their Fourth Amended Complaint against the Developers, they served Federal with demands for a defense. Federal refused to defend. In June 1994 after the filing of the Third Amendment to the Fourth Amended Complaint, counsel for the Developers made written demands for a defense on both Federal and Newark based upon the claims set forth in the Third Amendment. Both carriers admitted that they issued the primary policies of insurance involved herein but denied coverage and refused to defend and indemnify the Developers.
Newark contended, first, that it was not obligated to provide a defense or indemnification since the Project was completed subsequent to the expiration of its policy and, second, that the defects complained of during the policy period constituted deficiencies in the "work in progress, rather than property damage."
Federal asserted, among other defenses, that its policies did not provide coverage for faulty workmanship of the insured or for the consequences of negligently performed services. In addition, it claimed that the "design and construction defects" upon which the Associations based their claims do not constitute property damage under a CGL policy.

*68 The Agreement in Partial Settlement

On June 30, 1994, shortly after the Associations filed the Third Amendment but before the Developers filed the third-party complaint, the Developers entered into a comprehensive 47-page "Agreement in Partial Settlement of Litigation" (Agreement) with the Associations. The stated objectives of the Agreement are to expedite resolution of the litigation and to limit the amount of the plaintiffs' claims against the Developers. The Agreement requires the Developers to:
1. Retain the law firm of Hirsch, Newman & Simpson to file an action to join insurers in the underlying litigation;
2. "Diligently and thoroughly" defend and/or prosecute all claims, counterclaims and cross-claims involving the contractors and sub-contractors ("Builder Defendants") on the Project;
3. Consent to amendments to the plaintiffs' pleadings;
4. Retain the law firm recommended by plaintiffs' counsel, Ansell, Zaro, Bennet & Grimm ("Ansell"), to represent them in defense of the claims in the underlying construction litigation;
5. Pay Ansell's fees, excluding any reimbursement obtained from insurers, up to $100,000;
6. "Immediately execute," at the request of the plaintiffs, general releases in favor of codefendant Builder Defendants and their insurers, with "blank" executed releases to be escrowed by plaintiffs' counsel; and
7. Agree that the proceeds of all settlements will go to the Associations; any claims of the Developers are subordinate.
In addition, the Associations agreed to limit their recourse against S/A Associates "to the amount of insurance, if any," and against the other insureds to the sum of $15,000,000. However, the Associations, at their sole discretion, may declare the Agreement null and void if they determine that the Developers have failed in any respect to perform their obligations under the Agreement.
At the "closing" of the Agreement on June 30, 1994, the Developers were required to execute releases, some in blank, in favor of all codefendants and their insurers. Settlement with two codefendants, Barrett Allen Ginsberg (architect) and Grandview Waterproofing, Inc. became effective on that date. The Developers *69 executed releases to both Ginsburg and Grandview and their insurers, and the Associations apparently received settlement payments totalling $839,299.93.
Federal's brief denies that it had any notice of the Agreement until October 13, 1995, and contends that the Agreement was not presented to the trial court at the time of the October 11, 1995, conference.[4] Based upon receipt of filed Stipulations of Dismissal, Federal believes that as of October 18, 1995, the Associations had settled with all of the design professionals (six named defendants), the first general contractor (Alpine Woods), and five subcontractors. On December 18, 1995, default judgments in amounts totalling $4,173,767 were entered against four other subcontractors. Federal contends that it has no idea how much the Associations have been paid to date or whether they have been paid "in full" for their alleged damages.

Federal's Issues on Appeal
Federal seeks a reversal of the order for partial summary judgment requiring it to assume control of the defense on behalf of the third-party plaintiffs with respect to all claims asserted in the underlying litigation; alternatively, if we determine that it has such a duty to reimburse at some future date, its duty should be limited to reimbursement of defense costs on ultimately established claims for which it afforded coverage. Federal argues that the trial court erred as a matter of law in determining that it had a duty to defend because (1) its CGL policies do not cover liability for faulty workmanship or professional negligence; (2) the damages alleged do not constitute "property damage" caused by an "occurrence" as defined in the policies; (3) exclusions in its policies preclude coverage; (4) it has no obligation to defend or indemnify third-party plaintiffs because they breached material provisions in the CGL policies; (5) the trial court's order requiring it to assume immediate control on the defense of all claims *70 asserted against its insureds constitutes reversible error because it had no duty to defend claims not covered by the policies; and (6) the trial court erred in refusing to treat Federal's defense obligation, if any, as a duty to reimburse.

Newark's Issues on Appeal
Newark seeks a reversal of the order and a declaration that it has no duty to defend third-party plaintiffs with respect to the underlying litigation. Newark contends that (1) third-party plaintiffs are not entitled to coverage because the property damage alleged did not occur during its policy period; (2) various exclusions set forth in the policy negate any obligation to defend the third-party plaintiffs in the underlying action; (3) coverage is excluded under the policy's broad form comprehensive general liability endorsement; and finally, (4) summary judgment should be granted in its favor pursuant to Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 666 A.2d 146 (1995).

Effect of Our Original Denial of Leave to Appeal
Although the Associations argue that our denial of leave to appeal the April 1995 order effectively required the insurance companies to defend the action, the subsequent decision of the trial court in requiring the insurers immediately to assume control of the defense of the underlying construction litigation, reimburse their insureds for all defense costs incurred to date, and potentially be bound by any settlement between its insureds and the Associations causes us to have to review the insurance companies' obligations.

The Duty to Defend
Federal argues that if it has a duty to defend, that duty is limited to the allegations of negligence asserted against the Developers in the Third Amendment. Newark argues, as it did before the trial court, that the Developers are not entitled to coverage on any of the counts in the Third Amendment.
*71 The principles governing the insurer's duty to defend are well settled. First, it is clear that the insurer's duty to defend is typically broader than its duty to indemnify. As we said in Hartford Insurance Group v. Marson Construction Corp., 186 N.J. Super. 253, 257, 452 A.2d 473 (App.Div. 1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983):
The insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obliged to pay.
The duty to defend is neither a product of statute nor common law, "but is solely a contractual undertaking made in the insurance policy." Horesh v. State Farm Fire & Casualty Co., 265 N.J. Super. 32, 38, 625 A.2d 541 (App.Div. 1993). Therefore, an insurer is charged with the duty to defend against claims which arise under the contract of insurance. SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J. 188, 215, 607 A.2d 1266 (1992). The Supreme Court has held that "the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured." Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984). Accordingly, an insurer's "duty to defend is determined by comparing the allegations in the complaint with the language of the policy." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992).
As noted earlier, the Developers' third-party complaint against the insurers relies solely on those allegations of negligence asserted by the plaintiff Associations against the Developers in the Third Amendment. The Third Amendment, by contrast, asserts four additional causes of action, including (1) violation of The Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56, and the New Jersey Uniform Construction Code, New Home Warranty and Builders Registration Act, N.J.S.A. 46:3B-1 to -20; breach of contract and warranty; breach of fiduciary duty; and misrepresentation. Nevertheless, the trial court ordered the insurers to assume immediate control of the *72 defense with respect to all five causes of action asserted against the Developers.
The claims for breach of contract and warranty and breach of fiduciary duty clearly do not assert claims for which coverage is provided. See Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979). Furthermore, the standard exclusion for intentional acts of the insured precludes an obligation to defend and/or indemnify with respect to the claims of misrepresentation and statutory violations.
Although the duty to defend is broader than the duty to pay, the duty "is not broader in the sense that it extends to claims not covered by the covenant to pay." Horesh v. State Farm Fire & Casualty Co., supra, 265 N.J. Super. at 38, 625 A.2d 541. It is only when the allegation in the complaint and the language in the policy correspond that the duty to defend against that claim arises. See Voorhees v. Preferred Mut. Ins. Co., supra, 128 N.J. at 173, 607 A.2d 1255 (emphasis added). "If an excluded claim is made, the insurer has no duty to undertake the expense and effort to defeat it, however frivolous it may appear to be." Horesh v. State Farm Fire & Casualty Co., supra, 265 N.J. Super. at 39, 625 A.2d 541.
The five claims set forth in the Third Amendment do not represent conflicting theories for the same claim, but rather constitute separate claims for damages, some of which are based on intentional acts of the insureds and thus are excluded from coverage under Newark's and Federal's policies. The third-party complaint, therefore, alleges only one covered claim, that of negligence.
There was no factual or legal basis for the trial court's October 19, 1995, order that the insurers must assume responsibility for defense of all claims. The insurers' legal duty is "to pay only those defense costs reasonably associated with claims covered under the policy." SL Industries, Inc. v. American Motorists Ins. Co., supra, 128 N.J. at 215, 607 A.2d 1266; see also Burd v. *73 Sussex Mut. Ins. Co., 56 N.J. 383, 389, 267 A.2d 7 (1970) (explaining that "the carrier's promise is to defeat or to pay a claim within the policy coverage"). At a minimum, the trial court should have held a hearing to more fully explore the coverage issues.

The Duty to Reimburse
Problems often arise with respect to the duty to defend where, as here, the complaint against the insured alleges various causes of action, some of which are not within the scope of the insurance contract. For example, where a conflict of interest exists between the insurer and the insured on the issue of coverage, our courts have established procedures by which to resolve some of those problems. See Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co., supra, 98 N.J. at 25-26, 483 A.2d 402; Burd v. Sussex Mut. Ins. Co., supra, 56 N.J. at 391, 267 A.2d 7; Morton Int'l, Inc. v. General Accident Ins. Co. of Am., 266 N.J. Super. 300, 340-45, 629 A.2d 895 (App.Div. 1991), aff'd, 134 N.J. 1, 95, 629 A.2d 831 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994).
Where a conflict exists between an insurer and its insured by virtue of the insurer's duty to defend mutually-exclusive covered and non-covered claims against the insured, the duty to defend is translated into a duty to reimburse the insured for the cost of defending the underlying action if it should ultimately be determined, based on the disposition of that action, that the insured was entitled to a defense. Burd v. Sussex Mut. Ins. Co., supra, 56 N.J. at 390, 267 A.2d 7.
Similarly, where an insurer did not undertake defense of the case at the inception of the litigation, the duty to defend may be converted into a duty to reimburse. SL Industries, Inc. v. American Motorists Ins. Co., supra, 128 N.J. at 200, 607 A.2d 1266. Moreover, when the insurer wrongfully refused to defend an action but ultimately was found liable for defense costs "its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between *74 covered and non-covered claims." Id. at 214-15, 607 A.2d 1266; see also City Council of Elizabeth v. Fumero, 143 N.J. Super. 275, 289, 362 A.2d 1279 (Law Div. 1976) (finding the insurer liable for only those defense costs associated with the covered claim). Only when the defense costs defy apportionment between covered and non-covered claims will insurers be required to pay all of the defense costs, including those costs associated with the non-covered claims. SL Industries, Inc. v. American Motorists Ins. Co., supra, 128 N.J. at 215-16, 607 A.2d 1266.
There are appropriate instances where "an insured must initially assume the costs of defense itself, subject to reimbursement by the insurer if it prevails on the coverage question." Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co., supra, 98 N.J. at 24 n. 3, 483 A.2d 402. For example, in Sands v. Cigna Property and Casualty Insurance Co., 289 N.J. Super. 344, 674 A.2d 169 (App.Div. 1995), we held that when insurance companies failed to produce any facts to negate coverage (i.e., that the insured intentionally discharged a known pollutant) and their claim of potential conflicts was illusory, the insurers would not be permitted to turn their duty to defend into a duty to reimburse. Id. at 350, 674 A.2d 169.
Here, there are many circumstances which militate against the trial court's decision that the insurers immediately assume defense of all causes of action and pay all legal fees and disbursements to date incurred by the insureds. First, the trial court conceded that some of the claims asserted against the Developers are "clearly not covered" by the policies. Second, there appears to be an inherent conflict by virtue of the fact that the insurers will contest what they characterize as the "late-raised, and factually unsupported, claims" by the Associations and the Developers that the Third Amendment alleges damage to the property of third persons (purportedly convincing the trial court *75 that the claims were covered by the policies).[5] Third, this case is more than six years old and involves sophisticated parties most of whom have been represented by counsel since inception of the law suit. Fourth, Newark is obligated to defend the insured only if the property damage occurred between January 9, 1987, and January 9, 1988; yet the design and construction of the Project took place between 1985 and 1989.
Fifth, the underlying litigation will not resolve the coverage issues in this case. We are also not certain what the basis of the charges against third-party plaintiffs is that would trigger coverage under Federal's policy. The charges appear to be based on construction defects, that is, professional negligence. If this is not an occurrence in the true sense, there would be no coverage. Furthermore, whether any exclusions are applicable is a question that cannot be resolved in the underlying litigation.
Finally, and most importantly, if the Agreement between the Developers and the Associations limits or extinguishes the rights of the insurers to pursue contractual indemnification and subrogation claims, then it appears that the insurers cannot fairly be required to now take control of the defense of this litigation. The Agreement apparently attempts to limit the liability of the Developers and assure that the individual Developers would not be at risk. Significantly, another interesting feature of the Agreement is that it releases all claims against individual defendants and Hannoch Weisman, all of whom had potential liability. Thus, the Agreement may have impaired the fundamental rights of the insurers.
In addition, the Developers must retain the law firm recommended by plaintiffs' attorneys and pay plaintiffs' fees, including any reimbursement obtained from insurers up to $100,000. The *76 Agreement also seeks to avoid a loss of recovery by plaintiffs in the event that there is a bankruptcy or insolvency of the Developers.
It further appears that the Developers executed releases to codefendants and their insurers and that plaintiffs received settlement payments totaling more than $800,000. There is no indication in the record as to whether plaintiffs have been paid in full for their losses.
Moreover, there is a factual question whether the Developers, by entering into the Agreement, violated the general cooperation clause in the policies.

CONCLUSION
The insurers' duty to defend should have been converted to a duty to reimburse pending the outcome of the coverage litigation. Third-party plaintiffs should continue their defense of the underlying action without prejudice to any right they may have to recover or be indemnified by the insurers under the terms of the policies if coverage otherwise exists.
We reverse the order of October 19, 1995, and remand to the trial court to have the coverage trial as to Federal and Newark proceed prior to the action against the insureds.
NOTES
[1] Although the record does not reflect that the appeals were consolidated, they are being considered together.
[2] During the initial years of their existence, the Associations were dominated and controlled by Windsor Cove Associates. During this period, ownership of the common elements of Grand Cove was transferred by Windsor Cove Associates to the Associations, and residential units were offered for sale to the public pursuant to a private offering statement filed with the New Jersey Department of Community Affairs and other public agencies. Windsor Cove Associates, although now a defendant/third-party plaintiff in the underlying litigation, was a plaintiff in the initial complaint.
[3] The Developers  Windjammer Construction Corp., Windjammer Construction Corp. of New Jersey, Windsor Cove Associates, S/A Associates and Anchorage Woods Construction Corp.  are Defendants/Third-Party Plaintiffs-Respondents.
[4] We granted Federal leave to supplement the record on this appeal with the Agreement.
[5] The Associations state that "[a]lthough having no formal contracts to perform work or services, Federal's insureds acted in a variety of roles and performed an admixture of services on the Project." Thus, the "precise nature and scope of the insureds' activities will be a central focus of the trial."