Margaret Kelly MICHAELS, Plaintiff,

v.

STATE OF NEW JERSEY, Attorney General's Office, County of Essex, Essex County Prosecutor's Office, George L. Schneider, Esq., Herbert Tate, Esq., John Mastroangelo, John Noonan, Glenn Goldberg, Esq., Sarah Spencer–McArdle, Eileen C. Treacy, M.A., Essex County Police Department, Newark Police Department, Division of Youth and Family Services, Louis Fonnelaras, Susan Esquillan, [ ], Defendants.

Civil Action No. 96–3557 (MTB).

United States District Court, D. New Jersey.

June 30, 1997.

Louis J. Santore, Santore & Kenny, Secaucus, NJ, for Plaintiff.

Jerry Fischer, Assistant Attorney General, Attorney General of New Jersey, Trenton, NJ, for Defendant State of New Jersey.

Michael R. Griffinger, Crummy DelDeo Dolan Griffinger & Vecchione, Newark, NJ, for Defendant County of Essex.

## *OPINION*

BARRY, District Judge.

The County of Essex (the "County") moves for summary judgment on the complaint of plaintiff Margaret Kelly Michaels ("Michaels") on the ground that the County cannot be held liable on a theory of respondeat superior for the acts of the former Essex County Prosecutor, Herbert H. Tate, Jr., three former assistant prosecutors, Glenn D. Goldberg ("Goldberg"), Sara Sencer–McArdle (improperly plead as "Sara Spencer–McArdle") ("Sencer–McArdle"), and George L. Schneider, and an investigator, John Mastroangelo (collectively the "prosecutorial defendants"). The County also moves for summary judgment on its crossclaims against defendant the State of New Jersey (the "State") on the ground that the State is legally responsible for indemnifying and defending the prosecutorial defendants because the claims asserted against them arose out of the criminal investigation and prosecution of Michaels.[1]

### I.

As discussed by this court in *Michaels v. State*, 955 F.Supp. 315 (D.N.J.1996), and in greater detail by the Supreme Court of New Jersey in *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994), and the Superior Court of New Jersey, Appellate Division, in *State v. Michaels*, 264 N.J.Super. 579, 625 A.2d 489 (App.Div.1993), this litigation arises out of the alleged malicious and unconstitutional investigation, prosecution, and conviction of a nursery school teacher for bizarre acts of sexual abuse against many of the children for whom she was responsible. For present pur-

---

1. The County, in addition to claiming that the State should indemnify the prosecutorial defendants, contends that the State should indemnify the County itself for all the costs incurred by it in defending the prosecutorial defendants until such time as the defense is assumed by the State. County's Second Crossclaim at ¶ 2. For purposes of this motion, the court will treat the County's claims as to the prosecutorial defendants and itself as one and the same.

poses, a brief synopsis of what has gone before will suffice.

On April 15, 1988, after a nine-month trial in the Superior Court of New Jersey, Law Division, a jury convicted Michaels of 115 counts of aggravated sexual assault, sexual assault, endangering the welfare of children, and terroristic threats. *Michaels,* 136 N.J. at 305–06, 642 A.2d 1372. On March 26, 1993, the Appellate Division reversed the conviction and remanded for a new trial, concluding that the prosecution's interviews and interrogations of the allegedly abused children were "highly improper." *Michaels,* 264 N.J.Super. at 629–32, 625 A.2d 489. The Appellate Division further ordered that in the event the prosecution decided to retry the case, a pretrial hearing would be necessary to determine whether the statements and testimony of those children should be excluded from evidence as untrustworthy. *Id.* at 631–32, 625 A.2d 489. On June 23, 1994, after granting certification on the limited issue of the pretrial hearing, the Supreme Court of New Jersey affirmed the Appellate Division's reversal and remand, and required the prosecution, in the event of a retrial, to prove the reliability of the children's statements by "clear and convincing" evidence because "the interrogations ... were improper and there is a substantial likelihood that the evidence derived from them is unreliable." *Michaels,* 136 N.J. at 324, 642 A.2d 1372. The prosecution decided not to retry Michaels and, on December 1, 1994, formally dismissed all criminal charges against her. Complaint, First Count at ¶ 25.

On June 13, 1996, Michaels filed a six-count complaint[2] in the Superior Court of New Jersey, Law Division. Defendants removed the case to this court on July 25, 1996. On September 12, 1996, the County filed two crossclaims against the State, seeking a declaratory judgment as to the State's obligation to indemnify and defend the prosecutorial defendants and the County.[3] On November 8, 1996, this court dismissed *sua sponte* the Second, Third, Fifth, and Sixth Counts of plaintiff's complaint for noncompliance with the limitations and notice provisions of the New Jersey Tort Claims Act, *see Michaels,* 955 F.Supp. at 315, leaving only plaintiff's malicious prosecution and § 1983 claims and the County's crossclaims. As noted above, the County now moves for summary judgment as to the complaint and the County's crossclaims against the State.

## II.

### A. *As to Plaintiff's Complaint*

■ The only theory of liability even arguably asserted in the complaint against the County is one of respondeat superior, i.e., that the County is vicariously liable for the actions of the prosecutorial defendants because they were acting as employees or agents of the County. This theory of liability, as applied to facts such as those present in this case, has been firmly rejected by both New Jersey courts and federal courts, presumably the reason why plaintiff has not opposed the motion insofar as it is addressed to plaintiff's complaint. Given this lack of opposition, only a brief discussion of the caselaw is necessary, arid that only to provide background for the County's motion insofar as it is addressed to the crossclaims.

In *Cashen v. Spann,* 66 N.J. 541, 334 A.2d 8 (1975), a case factually similar to the one at bar, the plaintiffs were the subject of an allegedly illegal search by Morris County detectives—a search that the Superior Court of New Jersey, Appellate Division, later described as a "bizarre mistake." *Cashen v. Spann,* 125 N.J.Super. 386, 391, 311 A.2d 192 (App.Div.1973). As a result of the illegal search, the plaintiffs sued Morris County on the theory of respondeat superior. After the trial court granted Morris County's motion

---

2. Michaels asserted claims for (1) malicious prosecution, (2) intentional infliction of emotional distress, (3) negligent training and supervision, (4) violation of 42 U.S.C. § 1983, (5) abuse of process, and (6) negligent and malicious prosecutorial misconduct.

3. Goldberg and Sencer–McArdle have formally requested that the County furnish them with counsel. *See* Rule 12G Statement of Material Facts at ¶ 6. On July 29, 1996, the County made a similar demand of the State for indemnification and defense costs, *id.* at ¶ 9, which was refused. *Id.* at ¶ 10.

for summary judgment, the Appellate Division, in one paragraph, affirmed:

> The theory upon which the plaintiffs assert liability on the part of the County of Morris is that the prosecutor and his aides were acting in this instance as agents of the county which was therefore vicariously liable on principles of Respondeat superior. The short answer—though the question was not discussed in any of the briefs—is that the prosecutor and his aides were *not agents of the county, but rather of the State* in their actions with respect to plaintiffs.
>
> \*   \*   \*   \*   \*   \*
>
> Therefore, in performing the actions with which they are charged, *the prosecutor and his aides were the agents of the State and not of the County* of Morris, and there is *no liability as to the county for those actions under the doctrine of Respondeat superior. . . .* We also leave for an appropriate case the question of whether the county may be vicariously liable for the actions of detectives in other circumstances.

*Id.* at 403–04, 311 A.2d 192 (emphasis added).

The Supreme Court of New Jersey affirmed the Appellate Division, again in one paragraph:

> We also agree with the Appellate Division that in the context of this case, *the prosecutor and the detectives are to be considered as agents of the State and not the county.* [Citation omitted]. We wish to make it clear, however, that our resolution of this issue is limited to the factual circumstances here presented. *We find it appropriate to regard the defendant officials as State agents where the alleged tortious conduct arose out of the investigation of criminal activity,* but we express no opinion on the question of whether the prosecutor or his detectives can be considered State or county employees for other circumstances. [Citations omitted]. We also leave for another day the question of whether a county may be held vicariously liable for the conduct of a prosecutor or his detectives in other circumstances.

*Cashen,* 66 N.J. at 552, 334 A.2d 8 (emphasis added).

Thus, so long as the prosecutorial defendants in this case were "investigat[ing] . . . criminal activity" or "execut[ing] their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime," *Coleman v. Kaye,* 87 F.3d 1491, 1499 (3d Cir.1996), the County cannot be held vicariously liable under New Jersey law for any claims arising therefrom. The State, in its answer to the County's crossclaims, concedes that the prosecutorial defendants "were executing their sworn duties to enforce the laws when they participated in the investigation arid prosecution that form the basis of plaintiff's claims." State's Answer to County's Crossclaims at ¶ 1. Plaintiff's claim against the County, therefore, falls squarely within the rule espoused in *Cashen,* leaving her without any cognizable claim, at least under New Jersey law, against the County. As a result, plaintiff's malicious prosecution claim against the County must be dismissed.

■ Plaintiff's claim under 42 U.S.C. § 1983 against the County is equally unavailing. Although the Eleventh Amendment does not protect county governments from liability under § 1983, the Supreme Court of the United States has imposed a substantial limitation on such liability. In *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that local governments may be sued only for their own unconstitutional or illegal policies, not for the acts of their employees. *Id.* at 691–94, 98 S.Ct. at 2036–38 ("a municipality cannot be held liable under § 1983 on a respondeat superior theory" for the acts of its agents or employees). *See also City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 922–23, 99 L.Ed.2d 107 (1988) (municipal government may not be held liable under § 1983 unless plaintiff proves existence of an unconstitutional policy, regulation, or ordinance promulgated by officials with final policy-making authority); *Carver v. Foerster,* 102 F.3d 96, 102 (3d Cir.1996), ("The Court in *Monell* stopped short of imposing respondeat superior liability on local governments"). Here, Michaels does not even allege that her constitutional rights were violated by any official policy enacted by the County and, instead, relies

solely on the doctrine of respondeat superior. Consequently, her § 1983 claim against the County must be dismissed. *See Sagendorf-Teal v. County of Rensselaer,* 100 F.3d 270, 276–77 (2d Cir.1996), (affirming grant of summary judgment in favor of county on plaintiff's § 1983 claim where "trial court was not presented with any evidence or allegation of an official [county] policy").

The County's motion for summary judgment as to plaintiff's complaint is hereby granted, and plaintiff's malicious prosecution and § 1983 claims against the County are hereby dismissed.

### B. *As To The Crossclaims Against The State*

■ The issue presented in the County's motion against the State—i.e., whether the State must indemnify and defend the prosecutorial defendants because the claims asserted against them arose out of a criminal investigation and prosecution[4]—remains unsettled, although both sides have attempted to convince the court of the contrary. Because the County and the State disagree not only as to the appropriate disposition of the motion, but as to the current state of the law itself, a review of the relevant decisional and statutory law is a necessary first step.

As discussed above, the Supreme Court of New Jersey in *Cashen* held that a County cannot be found vicariously liable for the acts of prosecutors because, when "investigat[ing] ... criminal activity," prosecutors act "as agents of the State and not the county." *Cashen,* 66 N.J. at 552, 334 A.2d 8. While *Cashen* is directly on point as to the issue raised in the County's motion against Michaels (i.e., whether the County can be held *vicariously liable* for the acts of the prosecutorial defendants), it did not consider the issue of whether the State is responsible for indemnification and defense costs. Indeed,

the Court explicitly limited the application of its ruling to the "factual circumstances [t]here presented" and "express[ed] no opinion on the questions of whether the prosecutor or his detectives can be considered State or county employees for *other purposes."* *Id.* (emphasis added). Thus, *Cashen* adds little to the equation.

After the dismissal of Morris County in *Cashen* was affirmed on appeal, Morris County's insurance carrier refused to represent the remaining county detectives. Consequently, the detectives filed an order to show cause why Morris County and its insurance carrier should not be required to defend and satisfy any judgment against the detectives. *Dunne v. Fireman's Fund Am. Ins. Co.,* 69 N.J. 244, 247, 353 A.2d 508 (1976). Morris County crossclaimed against the insurance carrier and filed a third-party complaint against the State, asserting that the State was obligated to defend the detectives and pay any judgment rendered against them. *Id.* After the trial court ordered Morris County to defend the detectives, Morris County appealed. The Supreme Court of New Jersey considered the limited issue of "whether the County of Morris, or its liability insurance carrier, Fireman's Fund American Insurance Company (Fireman's Fund), or neither [was] obligated to furnish a defense for the detectives in the *Cashen* suit." *Id.* at 245, 353 A.2d 508. In doing so, the Court analyzed the County's insurance policy to determine "whether the detectives in the County Prosecutor's office were 'persons insured' under the comprehensive liability insurance policy issued by Fireman's Fund to the County of Morris." *Id.* at 248, 353 A.2d 508.

The *Dunne* Court explained that "[c]ounty prosecutors' detectives possess a hybrid status." *Id.* That is, while the detectives were "'agents of the State'" when they "pre-

---

**4.** Although the County treats the indemnification and defense issues separately, It recognizes, correctly, that responsibilities for indemnification and defense costs should be, and normally are, "wedded together." County's Brief at.17 (citing *Burd v. Sussex Mut. Ins. Co.,* 56 N.J. 383, 388–89, 267 A.2d 7 (1970); *Grand Cove II Condominium Ass'n, Inc. v. Ginsberg,* 291 N.J.Super. 58, 71, 676 A.2d 1123 (App.Div.1996)). Indeed, N.J.S.A.

59:10–1 requires the State to indemnify anyone for whom the State must provide a defense pursuant to N.J.S.A. 39:10A–1. Thus, the court sees no reason, at least not in the context of this case, to analyze separately the issues of indemnification and the furnishing of a legal defense. The purpose of the latter, of course, is to avoid the entry of a damages award in the first instance.

par[ed] and execut[ed] the affidavit upon which the search warrant was based and conduct[ed] the search," *id.* at 250, 353 A.2d 508, "[a]t the same time they were also employees of and there existed an employer-employee relationship with the County" "for certain administrative and remunerative purposes." *Id.* at 250–51, 353 A.2d 508. Because the Court believed that the "literal" language of the policy afforded coverage for the detectives even though they possessed such a "hybrid status," *id.* at 251, 353 A.2d 508, it held that the County's insurance company "was under a duty to defend the suit." [5] *Id.* at 252, 353 A.2d 508. In so holding, however, the Court specifically declared that, because "[n]either the plaintiff detectives nor Fireman's Fund have sued the State" and because "no adjudication was made on the third party action of the County of Morris against the State," it was "not passing upon what responsibility, if any, the State may have to bear the cost of the defense or satisfy any judgment that may be entered against the detectives." *Id.* Thus, contrary to the State's contentions, *Dunne* is not dispositive of whether the State must indemnify and defend the prosecutorial defendants, and any extension of *Dunne* beyond the insurance context in which it was considered would be unwarranted. *See, e.g., In re Bergen County Bd. of Chosen Freeholders v. Bergen County Prosecutor*, 172 N.J.Super. 363, 368, 412 A.2d 130 (App.Div.1980) ("Since the [*Dunne*] case dealt with the narrow issue of the status of the detectives for insurance purposes, we do not find the opinion either controlling or instructive"); *Communications Workers of Am. v. Treffinger*, 291 N.J.Super. 336, 349, 677 A.2d 295 (Law Div.1996) ("[T]he *Dunne* case is inapplicable to the case at bar because its holding is Limited to a determination of who was the employer of the detectives for insurance purposes").

The State contends that, for at least the past twenty years or so since *Cashen* and *Dunne*, the County (i.e., never the State) has indemnified and defended employees such as the ones in this case in damages suits brought against them. Affidavit of Jerry Fischer ("Fischer Aff.") at ¶4. The County does not dispute this fact and, indeed, conceded it at oral argument. The County contends, however, that the recent decision by the Court of Appeals for the Third Circuit in *Coleman*, 87 F.3d at 1491, has clarified and changed the previous jurisprudence—or the lack thereof—regarding the issue before the court. Specifically, the County contends that, based on *Coleman*, the State rather than the County is now responsible for providing indemnification and defense costs for claims arising out of a criminal investigation or prosecution.[6]

*Coleman* considered an issue similar but, again, clearly not identical, to the one at bar, i.e., whether the County of Monmouth can be held vicariously liable for acts performed by the county prosecutor in his administrative capacity and unrelated to his duties in a criminal prosecution. *Id.* at 1499–1506. While *Coleman* filled in some of the gaps left open by the Supreme Court of New Jersey in *Cashen* and *Dunne*, it did not decide, or even address, the issue presented by the cross-claims, i.e., whether the State must indemnify and defend the prosecutorial defendants.

The Third Circuit found, as the *Dunne* Court had found as to county detectives, that county prosecutors and their subordinates possess a "hybrid status":

> The *Dunne* court stated that "[c]ounty prosecutors' detectives possess a hybrid status." [Citations omitted]. Our review of New Jersey law has convinced us that the same can be said about county prosecutors. When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State. But where, as here, the county prosecutor decides whether an employee at

---

5. The court analogized this situation to "one where an employer lends an employee to a second employer." *Id.* at 251 n. 3, 353 A.2d 508. In such a case, "[t]he general employer's liability and workmen's compensation policy ... was held to include accidents which occurred while the employee was working for the second em-

ployer." *Id.* (citing *Hall v. Crystal Lake Ice Co.*, 109 Vt. 416, 199 A. 252 (1938)).

6. Although the County relied on *Cashen and Coleman* in its moving brief, it conceded at oral argument that it would not have brought this motion if not for the *Coleman* decision.

his or her office is worthy of an open promotion, the county prosecutor is performing an administrative function on the local level entirely unrelated to the duties involved in criminal prosecution.

*Id.* at 1505–06. *See also id.* at 1499.

*Coleman* also answered one of the questions left undecided in *Cashen,* i.e., whether the "county may be held vicariously liable for the conduct of a prosecutor or his detectives in *other circumstances.*" *Cashen,* 66 N.J. at 552, 334 A.2d 8 (emphasis added). While *Coleman* unequivocally answered this as of then undecided question in the affirmative when it found that, consistent with a county prosecutor's "hybrid status," a county can be held liable for a prosecutor's acts that are "unrelated to the duties involved in criminal prosecution," *Coleman,* 87 F.3d at 1506, it did not address the still undecided question of "whether the prosecutor or his detectives can be considered State or county employees for *other purposes.*" *See Cashen,* 66 N.J. at 552, 334 A.2d 8 (emphasis added). That is, *Coleman,* like *Cashen,* dealt only with the issue of vicarious liability, albeit under different "circumstances," and did not address whether the rule espoused therein applied for "purposes" of indemnification or defense costs.[7]

Given that neither *Cashen, Dunne,* nor *Coleman* yields any definitive answers to the question presented herein, the court must attempt to discern the intent of the legislature. Section 59:2–2(a) of the New Jersey Tort Claims Act (the "Act") establishes, in broad terms, the principle of "respondeat superior" or "vicarious liability" for both the State and its counties:

A public entity is liable for injury proximately caused by an act or omission of a *public employee* within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

N.J.S.A. 59:2–2(a) (emphasis added). The Act defines a "public employee" as "an employee of a public entity." N.J.S.A. 59:1–3. A "public entity" includes the "State [ ] and any county . . . in the State." *Id.*

Sections 59:10A–1 and 59:10–1 provide the statutory authority for the State's duty to defend and indemnify State employees. Section 59:10A–1 provides, in pertinent part, as follows:

[T]he Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such *State employee* or former employee on account of an act or omission in the scope of his employment.

N.J.S.A. 59:10A–1 (emphasis added). Section 59:10–1 provides that, "[i]f pursuant to the provisions of [N.J.S.A. 59:10A–1] the Attorney General provides for the defense or an employee or former employee, the State shall provide indemnification for the *State employee.*" N.J.S.A. 59:10–1 (emphasis added).[8]

While the Act mandates indemnification of "State employees," it provides only permissive authority for local jurisdictions, such as counties. Section 59:10–4 provides, in pertinent part, that "[l]ocal public entities are hereby empowered to indemnify local public

---

7. At the heart of this dispute is the difference between *vicarious liability* and the obligation to provide indemnification and defense costs. As the Appellate Division recognized in *Township of Edison v. Hyland,* 156 N.J.Super. 137, 143, 383 A.2d 714 (App.Div.1978), the issues of whether an employer can be held vicariously liable for the acts of an employee and whether the employer must indemnify and defend the employee when sued individually, while perhaps related in a practical sense, are separate and distinct legal concepts. While the former issue involves whether an employer can be held liable in tort for the acts of others, the obligation to indemnify and defend an employee is remunerative in nature and typically arises by way of contract or, as in this case, statute. Quite simply, the mere fact

that an employer can be held liable under the doctrine of respondeat superior for the acts of an employee does not, as the County conceded at oral argument, lead inexorably to the conclusion that the employer must, absent a contractual or statutory obligation, indemnify or defend the person when sued individually. Similarly, the fact that an employer cannot be held liable under the doctrine of respondeat superior does not lead inexorably to the conclusion that the employer need not indemnify or defend the employee.

8. Thus, as discussed above, at least for purposes of the State's obligation under the Act, the concepts of indemnification and the provision of defense costs are "wedded together."

employees consistent with the provisions of this act." N.J.S.A. 59:10–4 (emphasis added). A "local public employee" is an employee of a "local public entity," which is defined as "a public entity other than the State." N.J.S.A. 59:8–2.[9] Interestingly, the Comment to N.J.S.A. 59:10–4 explains that the indemnity provided should be for and to those persons "generally" and "traditionally" considered the State's employees, and that the legislature intended to distinguish traditional State employees from the employees of other public entities by requiring the State to indemnify the former and merely encouraging the local public entities to indemnify the latter.

Based on the statutory framework, the critical issue, as this court sees it, is whether the prosecutorial defendants are "State employees" within the meaning of the Act's indemnification and defense provisions, N.J.S.A. 59:10–1 or 59:10A–1. The issue is

not, as the County puts it, whether the State is liable for the acts of the prosecutorial defendants within the meaning of N.J.S.A. 59:2–2(a).[10] The only court that has come close to dealing with this precise issue is the Appellate Division in *Hyland,* 156 N.J.Super. at 137, 383 A.2d 714. in *Hyland,* the court was asked to decide, among other things, whether the State was responsible for furnishing defense costs in a related civil rights suit then pending in federal court against two municipal police officers, both of whom were assigned to the county prosecutor's task force to combat narcotics-related crimes, and the county prosecutor's detective, who was assigned by the prosecutor to supervise the task force. The court found that, while a prosecutor and prosecutor's detectives may be considered agents of the State for purposes of vicarious liability, the police officers and detective therein were not "truly state employees," as required by N.J.S.A. 59:10A–

9. Pursuant to N.J.S.A. 59:10–4 on November 12, 1980, the Essex County Board of Freeholders adopted County Ordinance # 01206 ("Ordinance # 01206"), which provides that "[e]ach of the Constitutional officers shall be represented by the County counsel in all legal matters." Affidavit of Valerie L. Egar ("Egar Aff."), Exhibit D. Moreover, employment agreements between the Essex County Prosecutor and the Essex County Prosecutor's Detectives and Investigators Association ("Detectives and Investigators' Agreements"), effective July 1, 1989 through December 31, 1994, *see* Egar Aff., Exhibits A and B, and between the Essex County Prosecutor and the Essex County Prosecutor's Superior Officers' Association ("Superior Officers' Agreement" or, collectively, the "County Agreements"), effective January 1, 1992 to December 31, 1994, *see* Egar Aff., Exhibit C, provide, in identical fashion, for the indemnification and defense of detectives, investigators, and superior officers. For example, Article XIII, Section 1 of the Detectives and Investigators' Agreement and Article XIV, Section 3 of the Superior Officers' Agreement provide that:

> Whenever any civil action has been or shall be brought against any employee covered by this Agreement for any act or omission arising out of and in the course of and within the scope of the performance of the duties of such office, position or employment, all costs of defending such action shall be defrayed, including reasonable counsel fees and expenses, together with costs of appeal, if any, and all employees covered by this agreement shall be saved harmless and protected from financial loss resulting from any such civil action.

Although the court is not aware of any such agreements since 1994, the County advised the

court at oral argument that it continues to indemnify and defend its employees in a manner consistent with the County Agreements.

10. The County contends that, because the *State* (as a "public entity") can, within the literal wording of N.J.S.A. 59:2–2(a), be held liable for injury proximately caused by a *county* employee (i.e. a "public employee," which includes employees of both the State *and* the counties), the State's liability is not limited to "State employees." County's Reply Brief at 9. This argument, while arguably persuasive in the context of vicarious liability and not inconsistent with *Cashen* and *Coleman,* is factually and legally irrelevant to the issue before the court. Section 59:2–2(a) applies only to the issue of vicarious liability, which is not before the court, and has no effect on the Act's indemnification or defense provisions, which, unlike N.J.S.A. 59:2–2(a), limit their application to "State employees." N.J.S.A. 59:10–1 and 59:10A–1. While the analyses in *Cashen* and *Coleman* arguably can be squared with the broader language of N.J.S.A. 59:2–2(a) for liability purposes, it simply would strain credulity to find that the Supreme Court of New Jersey intended the phrase "agent of the State" as used in *Cashen* to be synonymous with a "State employee" within the meaning of N.J.S.A. 59:10–1 or 59:10A–1, particularly given that the Court, while it found that prosecutors and their aides can be considered "agents" for purposes of vicarious Liability, declined to address whether prosecutors or their aides can be considered *"employees"* for purposes other than vicarious liability. This court, therefore, finds N.J.S.A. 59:2–2(a) no more persuasive or instructive than *Cashen* and *Coleman* as to this issue.

1. *Id.* at 141 and 144, 383 A.2d 714. While the court's reliance on *Dunne* in reaching this conclusion might have been misplaced for the reasons discussed above, its conclusion was correct.

As the Comment to N.J.S.A. 59:10–4 explains, the legislature intended, by limiting the State's liability for indemnification and defense costs to "State employees," to distinguish between public employees who *traditionally* have been considered State employees and those who have not. The narrow issue to be decided by this court, therefore, is whether public employees such as the prosecutorial defendants in this case traditionally have been considered State employees. Not even the County can contend—nor does it—that this has been the case. Indeed, it is undisputed that, for at least the last twenty years, the State has never indemnified or defended any county prosecutor or member of a prosecutor's staff in a money damages suit. *See* Fischer Aff. at ¶ 4. Instead, the County contends that, irrespective of tradition, *Coleman* now governs the issue and places the burden of providing indemnification and defense costs upon the State. As explained above, *Coleman* did not consider the issue before this court and does not advance the County's position.

Thus, given the care the Supreme Court of New Jersey took in limiting the application of *Cashen* coupled with the absence of any factual or legal support for the finding that public employees such as the prosecutorial defendants traditionally have been considered "State employees" within the meaning of N.J.S.A. 59:10–1 and N.J.S.A. 59:10A–1—this court predicts [11] that the Supreme Court of New Jersey would find that the State is not responsible for indemnifying and defending the prosecutorial defendants in this case.[12] The County's motion for summary judgment on its crossclaims against the State will, therefore, be denied and, because there

are no further issues regarding the crossclaims left to decide, the crossclaims will be dismissed.

### III.

For the reasons discussed above, the County's motion for summary judgment is granted as to plaintiff's complaint and denied as to the County's crossclaims against the State. Plaintiff's complaint against the County and the County's crossclaims against the State are hereby dismissed.

### *ORDER*

This matter having come before the court on the motion of defendant the County of Essex ("the County") for summary judgment on the complaint of plaintiff Margaret Kelly Michaels and on its crossclaims against defendant the State of New Jersey (the "State"); and the court having reviewed the submissions of the County and the State; and the court having heard oral argument on May 8, 1997 as to the County's motion against the State; and plaintiff having failed to submit any opposition to the County's motion; and for the reasons expressed in the court's opinion of even date;

IT IS on this 30th day of June, 1997, hereby

ORDERED that the County's motion for summary judgment as to plaintiff's complaint is hereby granted and, as a result, plaintiff's complaint against the County is hereby dismissed; and it is further

ORDERED that the County's motion for summary judgment as to its crossclaims against the State is hereby denied and, because there are no more legal or factual issues regarding the County's crossclaims left to decide, the County's crossclaims against the State are hereby dismissed.

---

11. This conclusion can well be debated, illustrating, yet again, why a federal court should be able to certify an issue of state law to the state supreme court, rather than having to predict, or "guess," what the state supreme court would do.

12. While this result creates (or, rather, leaves in place) a practical anomaly whereby the State

could be held vicariously liable for the actions of an individual—the same individual whom the county must indemnify and defend—it is an anomaly grounded in New Jersey statutory law and for which the Supreme Court of New Jersey has twice failed to resolve or provide any guidance.